UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Orlando Division
Case No. 6:21-cv-02098-ACC-EJK

| | |
|---|---|
| IMPACT RTO FLORIDA, LLC ) | |
| ) | AMENDED PETITION TO VACATE |
| ) | OR, IN THE ALTERNATIVE, |
| Petitioner, ) | TO MODIFY OR CORRECT |
| ) | ARBITRATION AWARD |
| v. ) | (Sections 10 and 11, Federal |
| ) | Arbitration Act, 9 U.S.C. §§ 10 and 11) |
| GREGORY BAKER ) | |
| ) | |
| Respondent. ) | |

**AMENDED PETITION TO VACATE ARBITRATION AWARD**
**OR, IN THE ALTERNATIVE, TO MODIFY THE ARBITRATION AWARD**

COMES NOW, Petitioner, IMPACT RTO FLORIDA, LLC ("Impact"), by and through undersigned counsel, and hereby files this Amended Petition to Vacate, or in the alternative, to Modify an Arbitration Award ("Petition") in favor of GREGORY BAKER ("Baker").

JURISDICTION AND VENUE

1. Jurisdiction of this matter is conferred on this court by Sections 10 and 11 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 10 and 11.[1]

2. Venue is proper pursuant to 28 U.S.C. § 1391(b), which states, in pertinent part:

> **(b)** **Venue in General. –** A civil action may be brought in –
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

---
[1] As more fully discussed *infra*, the arbitration agreement that is pertinent in this case confirms that it is "subject to and governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*" *See* Impact's Arbitration Agreement, Exh. B.

1

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated…

See 28 U.S.C. § 1391(b).

3. Venue is proper pursuant to section 10 of the FAA, 9. U.S.C. § 10, which states:

> In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration … (4) [w]here the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

See 9 U.S.C. §10 (4).

4. Venue is proper pursuant to section 11 of the FAA, 9. U.S.C. § 11, which states:

> In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration – …(b) [w]here the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

See 9 U.S.C. § 11 (b).

## PARTIES

5. Impact is a limited liability company doing business in Florida and several other states as part of the rental-purchase industry. It is a franchisee of Rent-A-Center Franchising International, Inc. ("RACFI"), a wholly owned subsidiary of Rent-A-Center, Inc. ("RAC"). RAC owns and operates rental purchase stores throughout the country separate and apart from the business of franchisees such as Impact.

6. Baker was a customer of Impact who on or about September 28, 2019 entered into a Rental Purchase Agreement with Impact to rent, with an option to purchase, certain merchandise, *i.e.*, furniture.

BACKGROUND

7. On or about September 28, 2019, Baker entered into and executed a Rental Purchase Agreement ("RPA") with Impact to rent, with an option to purchase, furniture for his personal use. Under the RPA, Baker was obligated to make periodic rental payments in order to retain possession of the merchandise or, he could, without penalty or further obligation, simply return the merchandise to Impact. Part of the RPA was an Arbitration Agreement ("Impact AA") also executed by Baker. A copy of the RPA and the AA are attached hereto as Exh. A and Exh. B, respectively. The transaction complied with and was governed by the Florida Rental Purchase Agreement Act, Florida Statutes, section 559.9231 *et. seq.*

8. In August of 2020, Baker stopped making his requisite periodic rental payments, at which point Impact initiated its standard collection protocol by attempting to contact Baker (who may at the time have been in custody as a result of a criminal conviction) to inquire if he would resume making payments or whether he would prefer to return the merchandise. Impact placed calls to Baker and to his mother, who was listed as a contact in the authorization form (as part of the RPA documents Baker signed), with whom he resided and who on occasion made the rental payments on his behalf.

9. On December 23, 2020, Baker and his mother instituted a Demand for Arbitration against Rent-A-Center, Inc., an improper party who has since been

determined not liable, and John Doe Franchisee (*i.e.*, Impact). Subsequently, Baker's mother was dropped from the case, and the action proceeded with Baker as the sole claimant and alleged violations of the Florida Consumer Collection Practices Act ("FCPPA"), Florida Statutes, section 5579.72(7), as the sole claim. *See* Amended Demand for Arbitration, which is attached hereto as <u>Exh. C</u>.

10. The case proceeded thereafter to arbitration before an arbitrator appointed by the American Arbitration Association ("AAA").

11. Overlooked by Impact, Baker (through legal counsel) submitted as part of the Amended Demand for Arbitration a heavily redacted document denominated "Rent-A-Center/Acceptance Now Consumer Arbitration Agreement" ("RAC AA"), bearing neither Baker's identity nor his signature. A copy of the RAC AA is attached hereto as <u>Exh. D</u>.

12. There being no doubt that there was an arbitration agreement as part of and governing the transaction, Impact simply accepted that the arbitration document appended to the Amended Demand for Arbitration was the operational arbitration agreement. Parenthetically, it is alleged that the exact same document was submitted by Baker's law firm in an unrelated case wherein there was indisputably **no** arbitration agreement and which, as a result, the AAA dismissed and returned the filing fee.[2]

---

[2] Baker's Illinois attorneys (who represented him in the arbitration and will presumably apply to practice in this jurisdiction for purposes of responding to this Petition) redacted an unrelated arbitration agreement (*i.e.*, the RAC AA) and presented it to the AAA and the arbitrator misrepresenting that that was the agreement which governed the parties' conduct and arbitration. Counsel for Baker knew that the document had not been signed by Baker, yet chose to present it at the arbitration nonetheless. As a matter of fact, they also presented the RAC AA

13. After an evidentiary hearing, during which no mention or reference was made to the applicable arbitration agreement, the arbitrator on November 8, 2021 issued an "Interim Award" in favor of Baker awarding him $5,000.00 for "actual damages" and $1,000.00 for statutory damages. The arbitrator reserved ruling on the issues of attorney's fees.[3]

---

in at least one other arbitration involving a different claimant – all the while knowing they were misrepresenting the facts.

Consequently, Petitioner wonders whether the intentional redaction and presentation by Baker's counsel of the RAC AA unsigned by Baker isn't a violation of the Illinois Supreme Court Rules of Professional Conduct – which govern the conduct of Baker's Illinois attorneys. Specifically, the rule on "truthfulness" states:

Rule 4.1 – Truthfulness in Statements to Others

*In the course of representing a client a lawyer shall not knowingly:*

(a)   *make a false statement of material fact or law to a third person*; or

(b)   fail to disclose a material fact when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6

Adopted July 1, 2009, effective January 1, 2020.

*Comment*

*Misrepresentation*

*[1] A lawyer is required to be truthful when dealing with others on a client's behalf, but generally has no affirmative duty to inform an opposing party of relevant facts.* ***A misrepresentation can occur if the lawyer incorporates or affirms a statement of another person that the lawyer knows is false. Misrepresentations can also occur by partially true but misleading statements or omissions that are the equivalent of affirmative false statements…***

Ill. Sup. Ct. R. 4.1 (as amended through September 29, 2021) (emphasis added).

[3]   In its Response in Opposition to Claimant's Requests for Costs and Attorney's Fees filed in the arbitration proceeding, Impact contested the liability imposed upon it on the basis that its actions were indeed appropriate under the law. As a result, Impact also objected to and contested the actual and statutory damages computation as devoid of supporting evidence. Nevertheless, for purposes of the herein Petition, Impact limits its arguments to the issue of attorney's fees.

14. In reviewing the issue of attorney's fees, legal counsel for Impact uncovered the actual applicable and binding arbitration agreement (Exh. B hereto) duly executed by Baker and immediately made the arbitrator aware of the fact in its Response in Opposition to Claimant's Request for Costs and Attorney's Fees.

15. That the arbitration agreement relied upon by the arbitrator is not the arbitration agreement entered into by Impact and Baker is clear from (a) the fact that it bears no identification of the parties nor any signatures, and (b) the caption to the document, to wit: "Rent-A-Center/Acceptance Now Consumer Arbitration Agreement". It should be noted that this is the arbitration agreement employed by RAC, the parent of Impact's franchisor, RACFI, which is evident simply from the reference to "Acceptance Now" (a virtual shopping platform not even available to franchisees such as Impact).

16. Unlike the arbitration agreement submitted as part of the Amended Demand for Arbitration (Exh. D hereto), the actual operating, applicable and binding arbitration agreement in this case (Exh. B hereto) provides: "*The costs and expenses of the arbitration shall be borne by Rent-A-Center, but each party will pay his/its own attorney's fees*" (emphasis supplied).

17. Nevertheless, in his ruling on attorney's fees the arbitrator completely ignored the fact that he was applying the wrong arbitration agreement and its provision on attorney's fees. A copy of the Final Award of Arbitrator, dated Dec. 3, 2021 ("Final Award"), is attached hereto as Exh. E.

## VACATUR (OR IN THE ALTERNATIVE, MODIFICATION) OF ARBITRATION AWARD (PURSUANT TO FAA, 9 U.S.C. §§ 10 AND 11)

18. Arbitration agreements are uncontestable creatures of contract, which bind the parties and the arbitration itself. *See Rent-A-Center, West, Inc. v. Jackson*, 531 U.S. 63 (2010); *Szuts v. Dean Witter Reynolds, Inc.*, 931 F.2d 830 (11th Cir. 1991). In signing the Impact arbitration agreement, Baker expressly agreed to pay for his own attorney's fees in this arbitration. Requests for "attorney's fees must be supported with proof of entitlement[.]". *Royal Surplus Lines Ins. Co. v. Coachmen Industries, Inc.*, 229 F.R.D. 695, 696–97 (M.D. Fla. 2005); *cf. Oliveri v. Thompson*, 803 F.2d 1262, 1265 (2d Cir. 1986) (explaining court has required clear evidence justifying inherent power to award fees).

19. Additionally, "a contractual attorney's fee provision must be strictly enforced" under Florida law. *See Kelly v. Lee Cnty. R.V. Sales Co.*, Case No: 8:18-cv-424-T-27JSS, at *7 (M.D. Fla. Feb. 22, 2021) (citing *Succar v. Safra Nat'l Bank of New York*, 237 F. App'x 526, 528 (11th Cir. 2007) (internal quotations and citation omitted)). "Florida law … requires contractual provisions for attorney's fees to 'unambiguously state that intention and clearly identify the matter in which the attorney's fees are recoverable…'" *Am. Univ. of the Caribbean, N.V. v. Caritas Healthcare, Inc.*, 441 F. App'x 644, 645 (11th Cir. 2011) (quoting *Sholkoff v. Boca Raton Cmty. Hosp., Inc.*, 693 So. 2d 1114, 1118 (Fla. 4th DCA 1997)). Trial courts do not have the discretion to decline to enforce attorney's fees provisions, even if the challenging party brings a meritorious claim in good faith. *Lashkajani v. Lashkajani*, 911 So. 2d 1154, 1158 (Fla. 2005).

20. In applying the wrong arbitration agreement and its attorney's fees provision, the arbitrator "exceeded his powers" as he went beyond the authority granted by the parties and decided an issue not pertinent to the resolution of the issue submitted to arbitration. *See* 9 U.S.C. § 10(4) ("where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made"). Arbitrators exceed their authority by deciding an arbitration in a manner contrary to the terms of an arbitration agreement. *See, e.g., Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 843 (11th Cir. 2011) (an arbitrator exceeds his or her authority by failing to provide an award in the form required by the arbitration agreement). Where, as here, an arbitrator not only failed to interpret the appropriate arbitration agreement and its attorney's fees provision, but ignored it altogether, he has exceeded his authority, thus warranting a vacatur of the improper determination on the issue.[4] *See Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) ("the sole question for us is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong") (a court may overturn an arbitrator's

---

[4] In justifying his position of awarding Baker attorney's fees, the arbitrator cited to the inapplicable arbitration agreement (*i.e.*, RAC AA), which states that an arbitrator may award such fees "if applicable law would entitle a party to an award of reasonable attorney's fees". *See* Final Award (Exh. E), at p. 1. The arbitrator goes on to cite an irrelevant case, *Arnold v. Source Sols. Mgmt.*, 2021 U.S. Lexis 1114805, at *5 (M.D. Fla. Apr. 27, 2021), for the proposition that an award of attorney's fees for a prevailing party is "mandatory" under the FCCPA. *See* Final Award (Exh. E), at pp. 1–2. However, the case cited is wholly inapplicable to the case at hand because the award of attorney's fees in that case *did not involve an arbitration agreement*; rather, it was entirely dependent on the FCCPA. Thus, because the arbitrator and Baker were unable to point to any authority (in either the Final Award or in Baker's Request for Costs and Attorney's fees, for that matter) for the proposition that alleged violations of the FCCPA obviate Florida's long-standing policy favoring enforcement of arbitration agreements and attorney's fees provisions as contained therein, *the attorney's fees award is improper and the Final Award must be vacated*.

determination "[o]nly if 'the arbitrator act[ed] outside the scope of his contractually delegated authority' – issuing an award that 'simply reflect[ed] [his] own notions of [economic] justice' rather than 'draw[ing] its essence from the contract.'").

21. It is clear beyond peradventure that the provisions of an arbitration agreement into which neither Impact nor Baker entered, such as <u>Exh. D</u> hereto, can hardly be contractually binding. Thus, the arbitrator's award, and in particular his decision as to attorney's fees, based on an arbitration agreement undeniably inapplicable to the parties, is fatally flawed as it not only manifested an action which "exceeded [his] powers" but also constituted an "evident material mistake in the description" of the actual arbitration agreement pertinent to the dispute at bar thereby giving this court ample authority under 9 U.S.C. §§ 11(a) and (b) to issue an order vacating, or in the alternative, modifying or correcting the arbitrator's award, particularly as to attorney's fees.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Impact RTO Florida, LLC respectfully prays of the court as follows:

1. Assume jurisdiction of the matters under sections 10 and 11 of the FAA, 9 U.S.C. §§ 10 and 11;

2. Vacate the arbitration award at least as to attorney's fee (or, in the alternative, modify the arbitrator's award to deny Baker any attorney's fees); and

3. For other and further relief as this court deems just, proper and equitable.

Respectfully submitted this 16th day of December, 2021.

          /s/ *Cintia Calevoso*
Cintia Calevoso, Esq.
Cintia Calevoso, P.A.
1101 Brickell Avenue
Suite 800S
Miami, Florida 33131
Tel: (786) 999-2635
cintia@calevosolaw.com
Florida Bar No. 88576
*Local Counsel for Petitioner*

*and*

    */s/ William W. Webb, Jr.*
WILLIAM W. WEBB, JR.
EDMISTEN & WEBB LAW
118 St. Mary's Street
2nd Floor
Raleigh, North Carolina 27605
Tel: (919) 831-8700
woodywebbjr@ew-law.com
N.C. State Bar No. 26814
*Special Appearance Counsel*

***Attorneys for Petitioner***