# Exhibit C

# Exhibit A

| | |
|---|---|
| GREGORY J. BAKER, <br><br> Claimant, <br><br> v. <br><br> RENT-A-CENTER, INC d/b/a RENT-A-CENTER EAST, INC., and IMPACT RTO FLORIDA, LLC d/b/a RENT-A-CENTER, <br><br> Respondents. | American Arbitration Association |

## AMENDED DEMAND FOR ARBITRATION

NOW comes GREGORY J. BAKER ("Claimant"), by and through the undersigned, complaining as to the conduct of RENT-A-CENTER, INC. d/b/a RENT-A-CENTER EAST, INC. ("RAC") and IMPACT RTO FLORIDA, LLC d/b/a RENT-A-CENTER ("Impact") (collectively "Respondents") as follows:

### NATURE OF THE ACTION

1. Claimant brings this action for damages pursuant to the Florida Consumer Collection Practices Act ("FCCPA") pursuant to Fla. Stat. §559.55 *et seq.* for Respondent's unlawful conduct.

### PARTIES

2. Claimant is a consumer above 18-years-of age residing in the state of Florida.

3. RAC is a furniture and electronics rent to own company operating out of Plano, Texas. RAC is a corporation organized under the laws of the state of Delaware with its principal place of business located at 5501 Headquarters Drive, Plano, Texas.

4. Upon information and belief, Impact is the entity that owns or otherwise manages the Rent-A-Center store located at 3863 South Nova Road, Port Orange, Florida ("subject location").

5. At all times relevant to the instant action, RAC exerted control over Impact and held out Impact to third parties as an agent of RAC, rendering RAC vicariously liable for the conduct engaged in by Impact, as well as directly liable for its role in the unlawful conduct experienced by Claimant.

6. Respondents acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, third-party contractors, representatives and insurers at all times relevant to the instant action.

### FACTS SUPPORTING CAUSES OF ACTION

7. The instant action stems from Respondents' efforts to collect upon a debt ("subject debt") Claimant is said to owe to Respondents in connection with personal goods Claimant purchased from Respondents.

8. Claimant lost his job as a result of the COVID-19 pandemic around March 2020, resulting in Claimant falling behind on his payments to Respondents.

9. In approximately March 2020, Respondents began placing repeated and persistent phone calls to Claimant's cellular phone (386) 631-2220, as well as to Claimant's mother, Sherry Baker's ("Sherry") cellular phone, (386) 451-3361, in an effort to collect upon the subject debt.

10. Claimant and Sherry were perplexed as to why Sherry was receiving calls from Respondents in connection with the subject debt, as she was not a co-signor on the agreement creating the subject debt nor was she obligated to pay the subject debt in any way, shape or form.

11. Nevertheless, Respondents would repeatedly contact Claimant and Sherry, disclosing Claimant's personal and sensitive financial information to Sherry, despite Sherry having no connection to the subject debt.

3

12. As a result of the information provided to and conduct directed towards Sherry, Claimant became emotionally distressed and embarrassed that his mother was being hounded for a debt which, as a result of his financial difficulties, he was unable to pay.

13. Claimant attempted to inform Respondents of the harassing nature of the phone calls and that Respondents' conduct needed to cease, yet Respondents continued placing persistent and repeated phone calls to both Claimant and Sherry regarding the subject debt.

14. Sherry attempted to inform Respondent that she had no connection to the subject debt and that they should be contacting Claimant; however, Respondent ignored Sherry and repeatedly pressured Sherry into making payments in connection with the subject debt – which Sherry did on multiple occasions.

15. Eventually, however, Sherry became distressed and felt harassed by the nature of Respondent's collection campaign, prompting Sherry to demand that Respondent's cease placing phone calls to her cellular phone.

16. Notwithstanding Sherry's demands that the phone calls stop, Respondents continued placing calls to Sherry's cellular phone seeking collection of the subject debt.

17. Both Claimant and Sherry have received dozens of phone calls from Respondents since demanding such phone calls stop.

18. In one such phone call, Respondents informed Sherry that there was a notation on the account notes associated with the subject debt that Sherry not be contacted further; however, the representative was told by her supervisor to continue calling Sherry notwithstanding Respondents' knowledge of the harassing nature of the phone calls.

19. In addition to harassing Claimant and Sherry through repeated and persistent phone calls, Respondents further attempted to collect upon the subject debt by sending individuals to Sherry's home to retrieve the consumer goods purchased by Claimant.

20. After Respondents' first visit to Sherry's home, Sherry informed Respondents that Gregory does not live there, the goods they're looking for are not in her home, and informed Respondents not to come back.

21. Respondents apologized and informed Sherry that they would not come back.

22. Notwithstanding the knowledge that the goods at issue were not at Sherry's home and despite the representations that Respondents would not return, Respondents returned to Sherry's home seeking collection of the subject debt on at least two more occasions.

23. There was no conceivable legitimate purpose to Respondents' subsequent visits to Sherry's home other than to harass Sherry and intrude upon her solitude in her home, given both the fact that Sherry had no connection to the subject debt and the fact that Respondents knew the goods they were seeking were not at Sherry's home.

24. On one such subsequent visit, Sherry was not home, but her father was. Sherry's father is an elderly gentleman who suffers from panic attacks and COPD. When Respondents arrived and informed Sherry's father that they were seeking to retrieve the goods purchased by Gregory, Sherry's father suffered a panic attack.

25. Sherry subsequently contacted Respondents' corporate office, advised them of the situation, and requested that the home visits stop.

26. Respondents yet again apologized to Sherry and informed her the home visits would stop – however, the visits continued.

27. On or about November 27, 2020, as a result of Respondents continual harassment of Sherry in her home despite Respondents' repeated representations such conduct would cease, Sherry filed a police report with the Daytona Beach Police Department in an effort to get Respondents harassment to stop.

28. Claimant has suffered emotional distress and harassment at the hands of Respondents, both given the phone calls he was receiving, as well as the harassing nature of the conduct directed towards Sherry.

29. As a result of Respondent's conduct, Claimant has suffered actual damages, including but not limited to: invasion of privacy, significant and severe emotional distress, lost time dealing with Respondents' harassment, and numerous violations of his state protected interests to be free from harassing and abusive debt collection conduct.

### COUNT I – VIOLATIONS OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT

30. Claimant restates and realleges paragraphs 1 through 29 as though fully set forth herein.

31. Claimant is a "consumer" as defined by Fla. Stat. § 559.55(8).

32. Respondents are "debt collector[s]" as defined by Florida Statutes §559.55(7).

33. The subject debt is a "consumer debt" as defined under Florida Statute § 559.55(6).

   a. **Violations of FCCPA § 559.72(7)**

34. Pursuant to § 559.72(7), no person collecting consumer debts shall "[w]illfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family."

35. Respondents violated section 559.72(7) of the FCCPA through the harassment directed at both Claimant and Sherry in connection with Respondents' efforts to collect the subject debt. Respondents persisted in contacting Claimant through phone calls despite being made aware such calls needed to stop. Further, despite Sherry having no connection to the subject debt, Respondents engaged in a harassing and abusive campaign to collect the subject debt from Sherry, through both the repeated phone calls as well as the harassing at-home visits. Respondents knew that their phone calls and home visits were harassing to Claimant and Sherry, yet continued to engage in such conduct hoping that Claimant and Sherry would feel abused and harassed and would subsequently agree to make payment to avoid the seemingly unavoidable parade of harassment. Respondents' harassment similarly caused Claimant's grandfather, Sherry's father, to suffer a panic attack and seek medical attention as a result. Such conduct, directed towards both a debtor and the debtor's family members, is in direct violation of the FCCPA.

WHEREFORE, Claimant, GREGORY J. BAKER, respectfully requests that this Arbitrator enter judgment in his favor as follows:

a. Enter judgment in Claimant's favor and against Respondents;

b. Award Claimant actual damages in an amount to be determined at trial pursuant to the Florida Consumer Collection Practices Act, Fla. Stat. §559.77;

c. Award Claimant statutory damages of $1,000.00 pursuant to the Florida Consumer Collection Practices Act, Fla. Stat. §559.77;

d. Award Claimant equitable relief, including enjoining Respondents from further violations, pursuant to Florida Consumer Collection Practices Act, Fla. Stat. §559.77(2);

e. Award Claimant costs and reasonable attorneys' fees pursuant to the Florida Consumer Collection Practices Act, Fla. Stat. §559.77;

f. Enjoining Respondents from further contacting Claimant and Sherry seeking payment of the subject debt; and

g. Award any other relief this Arbitrator deems equitable and just.

Dated: August 4, 2021

Respectfully submitted,

<u>/s/ Alejandro E. Figueroa</u>
Alejandro E. Figueroa, Esq.
Florida Bar No. 1021163
Sulaiman Law Group, Ltd.
2500 S Highland Ave, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181 Ext. 120
Fax: (630) 575-8188
alejandrof@sulaimanlaw.com
*Counsel for Claimant*